UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| JERMAINE KEITH UPSHAW<br>shawkey983@gmail.com,<br><br>Plaintiff,<br><br>v.<br><br>CARPENTER Officer, et al.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)  No. 2:22-cv-00256-JMS-MJD<br>)<br>)<br>)<br>)<br>) |

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiff Jermaine Upshaw filed this civil rights lawsuit alleging that Defendants violated his constitutional rights by placing him in restricted housing out of retaliation for filing a lawsuit against another Wabash Valley Correctional Facility ("Wabash Valley") staff member.

Defendants have moved for summary judgment. Dkt. [32]. For the reasons below, that motion is **GRANTED**.

**I.
Standard of Review**

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572–73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). A court only has to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it need

1

not "scour the record" for evidence that might be relevant. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 573−74 (7th Cir. 2017) (cleaned up).

A party seeking summary judgment must inform the district court of the basis for its motion and identify the record evidence it contends demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

## II.
## Factual Background

Because Defendants have moved for summary judgment under Rule 56(a), the Court views and recites the evidence in the light most favorable to Mr. Upshaw and draws all reasonable inferences in his favor. *Khungar*, 985 F.3d at 572–73.

### A. The Parties

At all times relevant, Defendants Steven Carpenter, Randall VanVleet, and Everado Angeles-Mora were employed at Wabash Valley in the following capacities: Defendants Carpenter and VanVleet were investigators for the Office of Investigations and Intelligence ("OII"), and Defendant Angeles-Mora was a Correctional Sergeant. Dkt. 33-1 at 10−11, 14 (Upshaw Dep.).

### B. The August 29, 2021, Assault against Mr. Upshaw

On August 29, 2021, Mr. Upshaw was physically assaulted by twenty inmates from his housing unit, F-Cellhouse ("F-House"). *Id.* at 12−13, 16, 70; dkt. 1 at 4, 6 (Complaint). Mr. Upshaw alleged that Wabash Valley employees, including non-party Sergeant Lantrip,

2

allowed Mr. Upshaw to be assaulted or participated in the attack. Dkt. 33-1 at 12-13, 18; dkt. 1 at 4, 6.

Immediately after the assault, Mr. Upshaw was placed on administrative segregation and transferred to another housing unit. Dkt. 33-2 at 1 (Communications Regarding Placement of Mr. Upshaw); dkt. 33-3 at ¶ 4(a) (VanVleet Aff.); dkt. 33-4 at 1 (Upshaw Movement History). OII investigated Mr. Upshaw's assault and ultimately concluded that there was no evidence to support his allegations that Wabash Valley staff facilitated the attack. Dkt. 33-2 at 2.

### C. Mr. Upshaw's Transfer to P-House

On November 5, while Mr. Upshaw was still on administrative segregation, he was transferred to P-Cellhouse ("P-House"). Dkt. 33-4 at 1. P- House is located on the opposite end of Wabash Valley as F-House, and due to this separation, inmates from those housing units rarely interact. Dkt. 33-3 at ¶ 4 (b). Thus, Mr. Upshaw was placed in P-House to protect him from the inmates who had attacked him. *Id.* P-House is typically a general population housing unit, but it was placed on lockdown status and strictly limited inmate activity while Mr. Upshaw resided there due to unrelated events. Dkt. 33-1 at 24−26, 28, 43; dkt. 33-3 at ¶ 4 (b).

### D. Mr. Upshaw's Transfer to the CCU

On November 29, Mr. Upshaw called Mr. VanVleet to discuss his housing placement. Dkt. 33-2 at 7; dkt. 33-1 at 25, 29, 37−38. During the call, Mr. VanVleet advised Mr. Upshaw that he was going to be moved back to F-House, which worried Mr. Upshaw since that was where his attackers resided. Dkt. 33-1 at 37−38, 44; dkt. 33-2 at 7.

On December 2, Mr. Upshaw submitted two Requests for Interviews to OII in which he suggested that he would likely enact violence against his attackers if he encountered them on his unit. Dkt. 33-2 at 5−6. In those Requests, Mr. Upshaw also expressed concerns about

being placed in G-Housing unit, another segregated housing unit, because he feared that his attackers potentially resided there. *Id.*

On December 6, 2021, Mr. Upshaw wrote to Warden Vanihel professing that, if he was moved back to F-House, he would be compelled to stab his assailants out of self-defense. Dkt. 33-2 at 7; dkt. 33-1 at 36−40, 47−48. This letter was forwarded to OII. Dkt. 33-3 at ¶ 4(d).

The next day, Mr. VanVleet transferred Mr. Upshaw to the Custody Control Unit ("CCU"), a segregated restrictive housing unit. Dkt. 33-4 at 1; dkt. 33-3 at ¶ 4(c). OII determined that the safety and security threats Mr. Upshaw raised in his correspondence were credible, and the transfer was instituted to prevent violence between Mr. Upshaw and his attackers. Dkt. 33-3 at ¶ 4(d). Because Mr. Upshaw hadn't identified most of his attackers at that time, however, OII had no way to be sure Mr. Upshaw was insulated from his aggressors besides placing him in segregation. *Id.*; dkt. 33-2 at 11, 12. Segregation guaranteed Mr. Upshaw's protection because inmates in segregation are generally unable to physically interact with other inmates. Dkt. 33-3 at ¶ 4 (d). Mr. Upshaw was moved to the CCU due to bed vacancy and OII's determination that he would be safe in that unit. *Id.* at ¶ 4 (e).

### E.  Mr. Upshaw's Transfer to the SCU

Upon his transfer to the CCU, Mr. Upshaw called Mr. VanVleet and told him he was concerned for his safety in the CCU because Sergeant Lantrip—who Mr. Upshaw still believed was involved in the attack—was stationed there. Dkt. 33-1 at 51; dkt. 33-3 at ¶ 4(f). In response to this concern, Mr. VanVleet moved Mr. Upshaw to the Secured Confinement Housing Unit ("SCU") on December 8, 2021. Dkt. 33-4 at 2; dkt. 33-3 at ¶ 4(f). Mr. Upshaw was moved there because it was the only available unit where staff could guarantee Mr. Upshaw's safety until he could be transferred to another facility. Dkt. 33-3 at ¶ 4(f).

4

Mr. Upshaw was transferred to Correctional Industrial Facility on June 8, 2022. Dkt. 33-3 at ¶ 4(h). This inter-facility transfer was made because Mr. Upshaw did not want to remain in the SCU, there was no alternative housing unit available at Wabash Valley, and the safety concerns about further violence between Mr. Upshaw and his attackers remained unresolved. *Id.*

### F.  Mr. Upshaw's Lawsuit against Sergeant Lantrip

On January 10, 2022, Mr. Upshaw filed a lawsuit against Sergeant Lantrip and other Wabash Valley employees for the 2021 assault. *See Upshaw v. Lantrip, et al.*, 2:22-cv-00012-JPH-DLP, Dkt. 1. Although Defendants were initially named in Mr. Upshaw's amended complaint to that action, filed on April 8, 2022, they were never issued process for that case. *See Upshaw v. Lantrip, et al.*, 2:22-cv-00012-JPH-DLP, dkt. 31 (Amended Complaint), dkt. 35 at 4−5 (Screening Order); dkt. 48 (Order Severing Claims into New Action).

Mr. Upshaw contends that he was transferred to P-House, the CCU, and the SCU and kept in those housing units for an extended period of time out of retaliation for his filing of case 2:22-cv-00012-JPH-DLP against Sergeant Lantrip. Dkt. 33-1 at 21, 57−58. Mr. Upshaw believed that the ongoing OII investigation was pretext for keeping him in the SCU. *Id.* at 59 ("3 months they kept me in the SHU pending an investigation that was already 3 months old."); *see also* dkt. 44-1 at 16 (May 6, 2022, Request for Interview) ("I have been pending this same investigation since Dec. 6, 2021. How does that happen? I want out of [the SCU] immediately!" How many times will W.V.C.F. allow themselves to be sued for the same thing over & over?"). With respect to the delay in the transfer to another facility, a unit team manager responded to Mr. Upshaw's May 6, 2022, Request for Interview, stating, "I inquired about your investigation status and OII has requested you be submitted for transfer to another facility. … Please know that we cannot transfer you until Central Office issues the transfer order." Dkt. 44-1 at 16.

5

Both Mr. VanVleet and Officer Angeles-Mora attested that they were unaware of the lawsuit against Sgt. Lantrip at all relevant times. Dkt. 33-5 at ¶ 6; dkt. 33-3 at ¶ 10.[1] Officer Angeles-Mora's involvement was limited to physically transferring Mr. Upshaw between the housing units; Officer Angeles-Mora had no authority to place him in a particular housing unit, nor did he know the reasons for the transfers. Dkt. 33-5 at ¶¶ 4−5; dkt. 33-1 at 11, 72. At his deposition, Mr. Upshaw seemingly conceded that Officer Angeles-Mora was not a decisionmaker in the matter. Dkt. 33-1 at 17 (testifying that he told Officer Angeles-Mora, "You know, you're definitely going to be [in the lawsuit]. I ain't trying to get no money out of you, but I need you as a witness.").

## III.
## Discussion

To succeed on a First Amendment retaliation claim, Mr. Upshaw must come forward with evidence sufficient to allow a reasonable jury to conclude that: (1) he engaged in protected First Amendment activity; (2) he suffered a deprivation that would likely deter future First Amendment activity; and (3) the protected activity was a motivating factor in Defendants' decision to take the allegedly retaliatory action.[2] *Taylor v. Van Lanen*, 27 F.4th 1280, 1284 (7th Cir. 2022). If he does so, the burden shifts to Defendants to show that the deprivation would have occurred even if he had not engaged in protected activity. *Manuel v. Nalley*, 966 F.3d 668, 680 (7th Cir. 2020). If they can make that showing, the burden shifts back to Mr. Upshaw to demonstrate that the proffered reason is pretextual or dishonest. *Id.*

---

[1] There is no direct testimony from Defendant Carpenter in the record.

[2] In his response in opposition to the motion for summary judgment, Mr. Upshaw argued that Defendants violated his due process rights under the Fourteenth Amendment by not regularly reviewing his placement in the SCU and his Eighth Amendment rights to be free from cruel and unusual punishment by not providing him adequate access to commissary and recreation. *See* dkt. 44. Those claims, however, were dismissed at screening, dkt. 9 at 3−4, and warrant no further discussion.

As an initial matter, it is undisputed that Officer Angeles-Mora's involvement was limited to physically transferring Mr. Upshaw among the various housing units at the direction of OII, and that he lacked authority to order these transfers. "Individual liability under § 1983 … requires personal involvement in the alleged constitutional deprivation." *Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017) (internal quotation omitted). Because Officer Angeles-Mora lacked sufficient knowledge or participation to be held personally liable, he is entitled to summary judgment.

This leaves Mr. Upshaw's claims against the OII investigators, Mr. Carpenter and Mr. VanVleet. They do not dispute that filing a lawsuit is a protected First Amendment activity, or that placement in a restrictive housing unit is capable of chilling First Amendment activity. Dkt. 34 at 9. Thus, the Court focuses on the third element.

"The motivating factor [element] amounts to a causal link between the activity and the unlawful retaliation." *Manuel*, 966 F.3d at 680. This element may be proven by circumstantial evidence, which may include suspicious timing; ambiguous statements, behavior, or comments directed at others in the protected group; evidence that similarly situated people were treated differently; and evidence that the decisionmaker offered a pretextual reason for an allegedly retaliatory action. *Id.*

As an initial matter, Mr. Upshaw filed his lawsuit against Sgt. Lantrip in January 2022, *after* he was transferred to the P-House, the CCU, and the SCU in November and December of 2021. There is no evidence that Mr. Upshaw told Mr. Carpenter or Mr. VanVleet of his intention to sue Sgt. Lantrip, so, as a practical matter, his lawsuit could not have been a motivating factor for his initial transfers to these units. Indeed, there is no evidence that any of the defendants were aware of the lawsuit against Sgt. Lantrip because they were not served in the 2:22-cv-00012-

JPH-DLP case. *Stagman v. Ryan*, 176 F.3d 986, 999–1000 (7th Cir. 1999) ("Allegedly protected speech cannot be proven to motivate retaliation, if there is no evidence that the defendants knew of the protected speech.").

Mr. Upshaw did remain in the SCU for several months after he filed the lawsuit in 2:22-cv-00012-JPH-DLP. But Defendants offered evidence that the reason Mr. Upshaw remained in the SCU was because of ongoing concerns for his safety, as well as the safety of other inmates, given Mr. Upshaw's statements that if he were placed in their presence, he would be willing to fight in self-defense. *See* dkt. 33-2 at 6 (Request for Interview to OII) ("[I]f you place me in a situation in which I believe my life is in danger again, I will act first. <u>Please check my package</u>. I am not afraid of 'knife work.'").[3] This penological justification demonstrates Mr. Upshaw would have remained in the SCU even if Defendants were aware of the lawsuit against Sgt. Lantrip. *Manuel*, 966 F.3d at 680. Mr. Upshaw has provided nothing more than speculation that Defendants acted in retaliation. *See FKFJ, Inc. v. Village of Worth*, 11 F.4th 574, 585 (7th Cir. 2021) ("A party must present more than mere speculation or conjecture to defeat a summary judgment motion.") (cleaned up). Mr. Carpenter and Mr. VanVleet are likewise entitled to summary judgment.

---

[3] Mr. Upshaw explained in his deposition that he was referring to an incident at Miami Correctional Facility in which he stabbed his cellmate 17 times for stealing his television. Dkt. 33-1 at 36−37.

IV.
Conclusion

For the foregoing reasons, Defendants' motion for summary judgment is **GRANTED**. Dkt. [32]. Final judgment consistent with this Order and the Court's September 30, 2022, Screening Order will issue in a separate entry.

**The clerk is directed** to update the spelling of Defendants' names as follows: Steven Carpenter, Randall VanVleet, and Everado Angeles-Mora.

**IT IS SO ORDERED.**

Date: 8/14/2024

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

Distribution:

JERMAINE KEITH UPSHAW
128636
CORRECTIONAL INDUSTRIAL FACILITY (CIF)
CORRECTIONAL INDUSTRIAL FACILITY
Inmate Mail/Parcels
5124 West Reformatory Road
PENDLETON, IN 46064

All Electronically Registered Counsel

9